UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,
STATE OF CALIFORNIA, STATE OF
COLORADO, STATE OF
CONNECTICUT, STATE OF
DELAWARE, STATE OF FLORIDA,
STATE OF GEORGIA, STATE OF
ILLINOIS, STATE OF INDIANA,
STATE OF LOUISIANA, STATE OF
MARYLAND, STATE OF
MASSACHUSETTS, STATE OF NEW
HAMPSHIRE, STATE OF NEW
JERSEY, STATE OF NEW YORK,
STATE OF NORTH CAROLINA,
STATE OF OKLAHOMA, STATE OF
RHODE ISLAND, STATE OF
TENNESSEE, STATE OF TEXAS,
STATE OF VIRGINIA, STATE OF
WASHINGTON, AND THE DISTRICT
OF COLUMBIA

17-CV-136 (JLS)

*ex. rel.* MICHAEL PILAT and
PHILIP MANISCALCO,

       Plaintiffs,

    v.

AMEDISYS, INC., and
DOES 1-100,

       Defendants.

## DECISION AND ORDER

Relators Michael Pilat and Philip Maniscalco filed this suit—on behalf of the

United States of America, twenty-one states, and the District of Columbia—under

the False Claims Act ("FCA") and the false claims acts of those states against

Amedisys, Inc., and Does 1-100.  Dkt. 1; Dkt. 58.

Amedisys moved to dismiss the Third Amended Complaint.  Dkt. 61.  For the

reasons discussed below, the Court grants this motion and dismisses the Third

Amended Complaint without leave to amend.

## PROCEDURAL HISTORY

Relators Pilat and Maniscalco filed the original complaint under seal on

February 25, 2017, and a First Amended Complaint under seal on July 25, 2018.

Dkts. 1, 18.  The United States, as well as the named states and the District of

Columbia, informed the Court, on May 19, 2021, that they were declining to

intervene.  Dkt. 38.  The Court unsealed the case that same day.  Dkt. 39.  On

August 9, 2021, the Relators filed a Second Amended Complaint, which Amedisys

moved to dismiss.  Dkts. 40, 51.  Rather than oppose that motion to dismiss,

Relators filed a Third Amended Complaint (Dkt. 58), which Amedisys moved to

dismiss (Dkt. 61).  Relators responded in opposition.  Dkt. 65.  And Amedisys

replied.  Dkt. 66.  The Court held oral argument on May 6, 2022.  *See* Dkt. 70.

## THIRD AMENDED COMPLAINT[1]

Relators allege that Amedisys is a home health services company whose

revenues began to suffer after facing allegations of Medicare fraud and entering into

a 2014 settlement agreement with the Department of Health and Human Services.

---

[1] This section contains a brief summary of the Third Amended Complaint.  For a
full recitation of the facts alleged in the Third Amended Complaint, see Dkt. 58.

Dkt. 58 ¶¶ 1-7.  Relator Pilat began working at Amedisys's Amherst, New York
home health center as a Clinical Manager Assistant and, in June 2015, Relator
Maniscalco began working there as a physical therapist.  *Id.* ¶¶ 8-9.

During their employment, Relators observed and became personally aware of
numerous allegedly fraudulent practices by Amedisys designed to generate or
inflate revenues through Medicare, Medicaid, TRICARE, and other government-
funded healthcare programs.  *Id.* ¶ 12.  Amedisys allegedly sought government
payment for home health services that were not eligible for reimbursement because
Amedisys: (1) improperly recruited patients for home health services via
relationships with hospitals and nursing homes, without evaluating eligibility or
need, and without receiving proper approval from the patients' physicians; (2)
fraudulently billed for improper and/or medically unnecessary treatment, including
patients who were not homebound or no longer required treatment; (3) falsified time
records in order to bill for services not provided or improperly rendered, as well as
unsafe overscheduling of clinicians leading to inadequate patient care; (4) inflated
Medicare and Medicaid reimbursements by "upcoding" patients for a more severe
diagnosis and more intensive level of care than was warranted; and (5) falsified
time entries to report that clinicians spent more time with a patient then they
actually did.  *See id.* ¶¶ 66a.-66e.; *id.* ¶¶ 67-158.

These strategies primarily were employed at the direction and under the
guidance of senior regional personnel and officers from Amedisys's headquarters.
*Id.* ¶ 17.  From at least 2015 onward, these practices resulted in fraudulent billing

practices and thousands of violations of the False Claims Act and of the state false claims acts. *Id.* ¶ 23.

The Third Amended Complaint contains the following counts: (1) presentation of false claims, in violation of 31 U.S.C. § 3729(a)(1), *see id.* ¶¶ 166-68; (2) making or using a false record or statement to cause a claim to be paid, in violation of 31 U.S.C. § 3729(a)(2), *see id.* ¶¶ 169-71; and (3) retaliation, in violation of 31 U.S.C. § 3730(h), *see id.* ¶¶ 172-74.[2]

## LEGAL STANDARDS

### I.   MOTION TO DISMISS

On a motion pursuant to Fed. R. Civ. P. 12(b)(6), "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

[2] The Third Amended Complaint also contains counts under the FCA state analogues of California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, and the District of Columbia. *Id.* ¶¶ 175-303.

4

This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

## II.    FALSE CLAIMS ACT AND RULE 9(B)

The False Claims Act is an anti-fraud statute "enforced not just through litigation brought by the Government itself, but also through civil *qui tam* actions that are filed by private parties, called relators, 'in the name of the Government.'" *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 575 U.S. 650, 653 (2015)). In relevant part, the FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the United States government, 31 U.S.C. § 3729(a)(1)(A), "knowingly makes, uses, or causes to be made or used, a false record or statement material to [such] a false or fraudulent claim," *id.* § 3729(a)(1)(B), or "conspires to commit [either] violation," *id.* § 3729(a)(1)(C). The FCA defines a "claim" as "any request or demand . . . for money or property" that is presented, directly or indirectly, to the United States. *Chorches*, 865 F.3d at 81 (citing 31 U.S.C. § 3729(b)(2)(A)).

Substantive FCA allegations are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Id.* (first citing *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016); and then citing *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995)). When allegations involve fraud, Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A complaint alleging fraud must ordinarily "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Chorches*, 865 F.3d at 81 (quoting *Ladas*, 824 F.3d at 25). "[C]ourts have characterized this pleading standard as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Monda v. Sikorsky Aircraft Corp.*, No. 3:99CV1026 (JBA), 2005 WL 1925903, at *2 (D. Conn. Aug. 11, 2005), *aff'd*, 207 F. App'x 28 (2d Cir. 2006) (citations omitted).

The adequacy of particularized allegations under Rule 9(b) is "case-and context-specific." *Chorches*, 865, F.3d at 81 (quoting *Espinoza ex. rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015)). Courts have described the "threefold" purpose of Rule 9(b) as follows: "it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Ladas*, 824 F.3d at 25-26 (quoting *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). Dismissal for failure to satisfy Rule 9(b)'s particularity standard is required where FCA claims under

Sections 3729(a)(1)(A) and (B) rest on "speculation and conclusory allegations." *United States ex rel. Duhaine v. Apple Health Care Inc.*, No. 3:19-CV-00963 (KAD), 2022 WL 3226631, at *5 (D. Conn. Aug. 10, 2022) (quoting *United States ex rel. Gelbman v. City of New York*, 790 F. App'x 244, 249 (2d Cir. 2019)).

Despite the rigid Rule 9(b) pleading requirements, allegations may be based on "information and belief when facts are peculiarly within the opposing party's knowledge." *Chorches*, 865 F.3d at 81-82 (citation omitted). Where pleading is permitted on information and belief, the complaint must "adduce specific facts supporting a strong inference of fraud." *Id.* at 82.

## DISCUSSION

Amedisys argues that Relators do not plausibly allege the submission of a false claim, particularly, that they have not alleged false claims or fraudulent conduct with the specificity required by Rule 9(b); that Relators do not adequately allege a false records claim or a retaliation claim; and that the state law claims should be dismissed alongside the analogous deficient FCA allegations. As discussed below, Amedisys is correct.[3]

## I.   THE THIRD AMENDED COMPLAINT FAILS TO ALLEGE FRAUD WITH SUFFICIENT PARTICULARITY

To state a claim under Sections 3729(a)(1)(A) and (B), a plaintiff must allege allege that "(1) defendant submitted a claim for payment to the [G]overnment, (2)

---

[3] Amedisys also argues that Relators fail to allege a valid theory of falsity. Because the Court agrees with Amedisys that the substantive FCA claims fail under Rule 9(b), the Court need not decide that issue.

the claim for payment was false or misleading, (3) defendant acted knowingly in making that false or misleading claim for payment, and (4) the false or misleading statement was material to the [G]overnment's decision to pay." *United States ex rel. Bonzani v. United Techs. Corp.*, No. 3:16-CV-1730 (JCH), 2019 WL 5394577, at *2 (D. Conn. Oct. 22, 2019) (citing *Chorches*, 865 F.3d at 81).

The primary component of an FCA violation is that the defendant submits or causes the submission of a claim for payment to the Government—that is, that "false records were actually presented to the [G]overnment for reimbursement." *Chorches*, 865 F.3d at 83-84; *see also U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("The submission of a false claim is . . . the *sine qua non* of a [FCA] violation"); *United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 878 (6th Cir. 2021) ("A critical component of an FCA complaint is the allegation that a claim for payment was presented to a government entity."). Rule 9(b)'s heightened standard does "not permit a [FCA relator] merely to describe a private scheme in detail but then to allege simply and without any stated reason for [his or her] belief that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311.

While there is no "mandatory checklist" of specific information that must be included, a plaintiff who provides "zero details identifying particular false claims and instead concludes fraudulent bills must have been submitted . . . [a]t best . . . alleges a course of conduct or scheme which he assumes culminated with the

submission of claims." *Ameti ex rel. United States v. Sikorsky Aircraft Corp.*, No. 3:14-CV-1223 (VLB), 2017 WL 2636037, at *6 (D. Conn. June 19, 2017); *see also U.S. ex rel. Chapman v. Off. of Child. & Fam. Servs. of State of New York*, No. 1:04-CV-1505, 2010 WL 610730, at *4 (N.D.N.Y. Feb. 16, 2010) (dismissing an amended complaint for failure to meet the particularity requirement of Rule 9b) where the plaintiff "lays out what he contends is an elaborate scheme, but then summarily concludes that the defendants submitted false claims to the government for reimbursement."), *aff'd sub nom. Chapman v. Off. of Child. & Fam. Servs. of the State of New York*, 423 F. App'x 104 (2d Cir. 2011).

While "[u]nderlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud or mistake' that must be pled with particularity pursuant to Rule 9(b)," pleadings "invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA qui tam action." *U.S. ex rel. Mooney v. Americare, Inc.*, No. 06-CV-1806 FB VVP, 2013 WL 1346022, at *3 (E.D.N.Y. Apr. 3, 2013) (quoting *United States ex rel. Karvelas v. Melrose–Wakefield Hospital*, 360 F.3d 220, 232–33 (1st Cir. 2004)); *see also Ladas,* 824 F.3d at 26-28 (affirming dismissal of a relator's complaint for failing to plead with the particularity required under Rule 9(b) because the complaint did not show any submitted claim was false or that the devices delivered to the Government failed to comply with contractual specification requirements).

Courts in the Second Circuit regularly dismiss complaints for this "fundamental deficiency," as one court described the Rule 9(b) specificity requirement. *See United States ex rel. Duhaine v. Apple Health Care Inc.*, No. 3:19-CV-00963 (KAD), 2022 WL 3226631, at *6 (D. Conn. Aug. 10, 2022). *Duhaine* involved allegations of a "decade-long fraudulent scheme to prescribe medically unnecessary therapies to vulnerable patients for the purpose of maximizing Medicare billing and reimbursements." *Id.* The complaint lacked information regarding the specific claims for Medicare reimbursement—such as the date of any such claim, the content of the forms or bills submitted, identification numbers, the amount billed to the Government, the particular services for which the Government was billed, the patients or individuals involved in the billing, or the length of time between the alleged non-reimbursable treatment of Medicare patients and the submission for their care. *Id.* The district court determined that the complaint was deficient because "[t]his information, or at least some of it, is critical to stating a FCA violation with the requisite particularity under Rule 9(b)." *Id.*

As the Second Circuit recognized in *Chorches*, in some cases a plaintiff may satisfy the more rigid pleading requirements of Rule 9(b) by pleading on information and belief—that is, by asserting specific reasons for why such information is peculiarly within another's knowledge and providing "specific facts supporting a strong inference of fraud." *Chorches*, 865 F.3d. at 82-83. In that case, Chorches conceded that he could not identify exact billing numbers, dates, or amounts for claims to the government. *Id.* at 82. Nevertheless, the Second Circuit

concluded that the complaint survived dismissal under Rule 9(b) because the complaint (1) adequately alleged that the billing information was peculiarly within the knowledge of the defendant, and (2) further alleged specific and plausible facts from which the court could infer that records were actually falsified and that those false records were actually submitted to the government for reimbursement. *Id.* at 82-86.

In a subsequent case, the Second Circuit affirmed the dismissal of an FCA complaint under Rule 9(b), distinguishing the allegations from those in *Chorches. See Gelbman*, 790 F. App'x at 249. Regarding allegations based on his personal knowledge, Gelbman failed to identify specific expense reports that were actually submitted to the federal government and could not attest to any details about the eligibility of Medicaid claims at the time of their submission to the federal government. *Id.* at 248. Nor could Gelbman rely on information and belief because—compared to the plausible and particularized allegations in *Chorches*—Gelbman offered "no such detail" regarding his reasons for not having personal knowledge of the reports or providing specifics of the alleged scheme. *Id.* at 249. Gelbman's "speculation and conclusory allegations"—lacking any information of how the claims were rigged or who did the rigging—failed to satisfy Rule 9(b)'s particularity standard. *Id.* at 248-250.

The Third Amended Complaint in this case similarly suffers this "fatal deficiency." *Duhaine.* 2022 WL 3226631, at *6. It provides conclusory allegations and hypothetical statements regarding a purported fraudulent scheme orchestrated

by Amedisys—but, critically, fails to allege actual instances where the schemes

occurred or false claims were submitted to the Government for reimbursement.

Relators purport to provide specific instances and examples of the alleged

fraud in relation to services provided by Amedisys.  For example, Relators cite two

instances in which a physician prevented Amedisys from providing care to a patient

without approval.  *See* Dkt. 58 ¶¶ 78-79.  Relators then attempt to contrast the

"rare exception" of these two patients with others by vaguely stating that they are

"personally aware that many, if not most, patients did in fact receive care without

proper approval and authorization from a physician." *Id.* ¶ 80.  Relators allege that

this was Amedisys's "normal practice," but they do not identify any specific names

or details concerning this presumably large population of patients.  *Id.*

In other examples, Relators cite their "personal knowledge," but do not

provide any details as to patients, invoices, records, providers, dates, supervisors,

etc.  As for the allegation regarding "upcoding" patients, Relator Maniscalco claims

he was personally aware that executives and clinical staff instructed therapists and

others to "upcode" patients to maximize billings—and if they did not, offsite coding

specialists would do it. *Id.* ¶ 102.  But for specific examples, the complaint is

sparse: in Summer 2016, Relator Maniscalco was directed to continue treating a

"patient in her late-50s with Parkinson's" who was no longer in need of care, *see id.*

¶¶ 109, 121a.; he objected when a Medicare patient with sitting to standing

ambulation was recertified three to four times more than necessary, *see id.* ¶¶ 110,

121b.; and two executive-level employees and the Regional Director instructed staff

(presumably including Maniscalco) to code each case a particular way in order to get higher reimbursements, *see id.* ¶ 112. Other "specific examples" of the fraudulent conduct recite two of the above examples, *see id.* ¶¶ 121a., 121b., but with little elaboration on the "who, what, where, when" of the treatment, claims, and submissions related to these patients. *Id.* ¶ 121a.-c. Again, while not every detail is required, "at least some" of this information is critical to pleading an FCA violation—and not enough is provided here. *Duhaine*, 2022 WL 3226631, at *6.

Maniscalco also claims that he is personally aware that Amedisys knowingly enrolled Medicare and Medicaid patients who are not homebound and submitted fraudulent billings to the government for these services. *Id.* ¶¶ 133-138. But the "egregious examples" provided in the complaint remain conclusory: a female patient who is approximately 70 years old who was recertified and provided care longer than Maniscalco recommended; and a 50-year-old man who was, in Maniscalco's view, independent, but was continued therapy treatment nonetheless. *Id.* ¶ 137a.-c. In another example, Pilat states that "at least one Medicare patient enrolled in November 2015 with severe Alzheimer's disease" was recertified beyond the initial coverage period when that patient "no longer benefitted from the treatment being performed." *Id.* ¶ 97. These nominal details, combined with conclusory statements regarding false forms for reimbursement, are inadequate. Nowhere in these examples is any particularized allegation that Amedysis submitted an actual claim or the government paid a claim for any of the services provided to these patients. *See Mooney*, 2013 WL 1346022, at *3 (pleadings are inadequate unless "linked to

allegations, stated with particularity, of the actual false claims submitted to the government").

In contrast to Relators' allegations here, the *Chorches* complaint provided a detailed overview of a scheme by AMR involving revising or recreating the electronic patient care reports to include false statements demonstrating medical necessity to ensure that ambulance runs would be reimbursable by Medicare. 865 F.3d at 76. Besides identifying general categories of patients who were susceptible to having their runs falsely revised or reported, the complaint in *Chorches* identified examples—more than ten specific runs—for which the relator was ordered to alter the patient care records to include false or misleading information. *Id.* at 76-77. The descriptions of these runs included numerous narrative details, including, but not limited to, specific dates, patient conditions, and instructions from supervisors and staff to falsify the reports in particular ways. *Id.* at 77-78. Relators' allegations here are not analogous to the precise, detailed allegations required under Rule 9(b) or exemplified in *Chorches*.

Nor have Relators adequately alleged that the billing information was peculiarly within the knowledge of Amedisys to be able to proceed "upon information and belief." The complaint in *Chorches* provided specific reasons why the information regarding particular bills submitted for reimbursement was peculiarly within AMR's knowledge—including how all ambulance personnel generally were unable to enter the administrative building where billing took place and were not able to participate in billing procedures. 865 F.3d at 82. Indeed, the

14

Second Circuit remarked that the particular circumstances of AMR's billing procedures—as thoroughly described in the complaint—"made it virtually impossible for most employees to have access to all of the information necessary to certify on personal knowledge both that a particular invoice was submitted for payment and that the facts stated to justify the invoice were false." *Id.*

Further, the plaintiffs in *Chorches* satisfied the second component of providing "specific facts supporting a strong inference of fraud." *Id.* at 83 (citing *Wexner*, 902 F.2d at 172)).  The complaint there detailed the specifics of the scheme whereby AMR falsified reports—including naming supervisory personnel who instructed paramedics and staff to revise the reports to insert false information, identifying the time period as well as dates as to many particular runs, and specifics on the exact method of using hard-copy markups that were later destroyed and ordering staff, under threat of suspension or termination, to revise the reports with false or misleading information so that the runs were certified as medically necessary. *Id.* at 83.  As discussed, *Chorches* also provided many examples of specific runs—with information like the date, patient name, and original reason for transport—for which a plaintiff was told to alter the reports with false or misleading information. *Id.* at 83-84.

As compared with the complaint in *Chorches*, Relators' Third Amended Complaint fails to allege that identification of particular claims is peculiarly within the knowledge of Amedisys and also fails to support a strong inference that specific false claims were indeed submitted to the government.  Relators allege that

Amedisys operated an independent billing department that operated outside of their knowledge and purview. Dkt. 58 ¶¶ 154-155. But Maniscalco admits to being able to review some forms after they were submitted to the billing department— enough to notice certain alleged changes made by that department that increased revenue to Amedisys. *Id.* This and other allegations based on Relators' own interactions with management and coding discussions suggest that Relators had some—albeit limited—access to billing information.

Moreover, Relators do not provide sufficient specific facts supporting a strong inference of fraud. Indeed, Relators' claims that they were being walled off from any billing information could permit them, pursuant to *Chorches*, to proceed on information and belief—but only if the complaint contained other "specific and plausible facts" filling in the gaps regarding the particular claims and the execution of the purported scheme. As explained in *Chorches*, pleading on "information and belief" in this context is not a relaxation of the standard under Rule 9(b)—"this standard 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." 865 F.3d at 86 (citing *Wexner*, 902 F.2d at 172). This so-called "relaxation" of the standard "does not mean that a plaintiff can plead no detail at all." *Duhaine*, 2022 WL 3226631, at *7 (citing *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, No. 11 CIV. 8196 CM, 2014 WL 2619014, at *6 (S.D.N.Y. June 10, 2014)). Unlike the categories of patients and ten specific runs described in detail in *Chorches*, Relators' examples do not fill in the gaps. They have no sufficient examples. As discussed above, the Third Amended Complaint in this case

fails to provide those crucial details, based on personal knowledge, *present in Chorches.*

Accordingly, the Third Amended Complaint does not establish the exceptional circumstances described in *Chorches* and does not satisfy the requirements of Rule 9(b).

## II.   STATE LAW CLAIMS ALSO FAIL

Relators also allege violations of different state analogues of the FCA as well as the District of Columbia False Claims Act.[4]  *See* Dkt. 58 ¶¶ 181-303.  Each count consists of about six nearly identical paragraphs.  The first paragraph states that "Relators repeat and incorporate by reference the allegations contained" in all preceding paragraphs.  *See, e.g., id.* ¶ 175.  The remaining paragraphs contain a basic recitation of false claims being submitted and each affected state government.  None of these causes of action identifies any false claims submitted to any particular state, or in violation of state law.

"Rule 9(b) also applies to claims brought under state analogues of the FCA in federal court."  *United States ex rel. SW Challenger, LLC v. EviCore Healthcare MSI, LLC*, No. 19 CIV. 2501 (VM), 2021 WL 3620427, at *7 (S.D.N.Y. Aug. 13, 2021) (quoting *United States v. Lab'y Corp. of Am. Holdings*, No. 107 Civ. 05696, 2015 WL 7292774, at *3 (S.D.N.Y. Nov. 17, 2015) (citations omitted).  The state law causes of action similarly do not meet the Rule 9(b) standard.  First, these causes of action do

---

[4] For ease of description in this case, the Court's references to "states," "state governments," "state law analogues," etc. in this section include the District of Columbia.

not allege any facts and contain conclusory allegations closely tracking the language of the federal statute. *See United States ex rel. Piacentile v. Amgen, Inc.*, 336 F. Supp. 3d 119, 139 (E.D.N.Y. 2018) (describing similar sparse state law causes of action). The factual allegations elsewhere in the complaint concern events occurring in New York, and do not contain any substantive, specific facts relating to any other state.

Further, even assuming that the facts underlying the state claims are the same as those underlying the federal FCA causes of action, they would fail to meet the Rule 9(b) standard for the same reasons set forth above. *Piacentile*, 336 F. Supp. 3d at 139; *see also Lab'y Corp. of Am. Holdings*, 2015 WL 7292774, at *7 ("Because Relator does not meet the Rule 9(b) pleading standard for any of its allegations, its state-law claims must be dismissed.").

## III.    THE RETALIATION CLAIMS ARE ALSO DEFICIENT

The FCA's anti-retaliation provision states:

> [a]ny employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA].

31 U.S.C. § 3730(h)(1).[5]

---

[5] Prior to 2009, Section 3730(h) provided a non-exclusive list of specific "lawful acts" done in furtherance of an FCA action that protected an employee—and did not include the broader language of "other efforts to stop . . . violations" that is now included in Section 3730(h). *Chorches*, 865 F.3d at 97 (citing 31 U.S.C. § 3730(h) (2006)).

To state a claim for retaliation under the FCA, courts "generally require[ ] a plaintiff to show that (1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 100 (2d Cir. 2019) (quoting *Chorches*, 865 F.3d at 95). As stated by the Eleventh Circuit, "if an employee's alleged actions are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee," then the employee has stated a retaliation claim under Section 3730(h). *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010).

FCA-based retaliation claims are not subject to the more stringent pleading requirements of Rule 9(b). *See Chorches*, 865 F.3d at 95 ("The particularity requirement of Rule 9(b) does not apply to retaliation claims under the FCA." (citations omitted)). Rather, a plaintiff "is required to show a 'good faith basis,' or 'objectively reasonable basis,' for believing that he or she was investigating matters in support of a viable FCA case." *Swanson v. Battery Park City Auth.*, No. 15-CV-6938 (JPO), 2016 WL 3198309, at *3 (S.D.N.Y. June 8, 2016) (quoting *U.S. ex rel. Sasaki v. New York Univ. Med. Ctr.*, No. 05-CV-6163, 2012 WL 220219, at *12 (S.D.N.Y. Jan. 25, 2012)). Ultimately, the conduct must be "directed at exposing a fraud upon the government." *Mirza v. Garnet Health*, No. 20-CV-00556 (PMH), 2022 WL 826410, at *9 (S.D.N.Y. Mar. 17, 2022) (citations omitted).

Generally, courts within this Circuit broadly interpret protected activity to include two types of conduct: (1) lawful acts done by the employee in furtherance of an action under the FCA, and (2) "other efforts" to stop one or more FCA violations. *Conte v. Kingston NH Operations LLC*, 585 F. Supp. 3d 218, 242 (N.D.N.Y. 2022) (quoting *Swanson*, 2016 WL 3198309, at *3). Within this second category of protected conduct, "a retaliation claim can be stated so long as the employee was engaged in efforts to stop an FCA violation, even if the employee's actions were not necessarily in furtherance of an FCA claim." *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 298 (E.D.N.Y. 2016) (citing *Swanson*, 2016 WL 3198309, at *3).

Here, Relators allege they repeatedly expressed their concerns with Amedisys's practice of seeking larger revenues through medically unnecessary services at the expense of the patients' health and Government's funds. Dkt. 58 ¶ 159. Pilat alleges he "repeatedly expressed concerns" to his supervisor via email "about the inability of nurses and therapists to keep up with Amedysis's extensive volume of patients," and that, as a result of this "negligent conduct, many patients were only seen for a few minutes rather than an amount of time commensurate with the Government billing." *Id.* ¶ 160. Pilat's termination in December 2016 was "at least in part for his refusal to be complicit with the known fraudulent and dangerous conduct of Amedisys that resulted in violations of the FCA." *Id.* ¶ 161. Maniscalco similarly states that he reported concerns about the admission of, and continued treatment of, patients who were either not homebound or otherwise not

covered by Government Funded Healthcare Programs, which resulted in violations of the FCA—but that his supervisor told him in response that the goal was to ensure the "best possible outcome for reimbursement." *Id.* ¶¶ 162-63. As a result of his "complaints" and "refusal to comply with the continued fraudulent conduct," Maniscalco was terminated on June 7, 2017—less than a month after the discussion with his supervisor. *Id.* ¶ 164.

Taking these allegations as true, the Third Amended Complaint fails to state a retaliation claim. Specifically, Relators have failed to allege facts that support an inference that they engaged in protected conduct—that is, Amedisys "could not have feared that [Relators were] contemplating filing a qui tam action or reporting Amedisys to the government for fraud." *United States ex rel. Raney v. Amedisys, Inc.*, No. 2:19-CV-01269-AKK, 2021 WL 4458874, at *4 (N.D. Ala. Sept. 29, 2021). To be protected, the conduct must be specifically directed at "exposing or deterring fraud." *Garcia v. Aspira of New York, Inc.*, No. 07 CIV. 5600 PKC, 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011) (citations omitted). As alleged, Pilat's "concerns" about being unable to keep up with the volume of patients and patients being seen for only a few minutes rather than the time billed do not have anything to do with potential false claims. Dkt. 58 ¶ 160. Rather, they are more appropriately characterized as concerns about patient care. *See Adiram v. Catholic Guardian Services*, No. 13-cv-6235 (SLT) (JO), 2015 WL 5706935, at *5 (E.D.N.Y. Sept. 23, 2015) (granting a motion to dismiss because plaintiff's well-pleaded allegations concerned only health and safety, not fraud against the government).

That Maniscalco expressed concerns about admission and treatment of patients who were not homebound or covered is similarly conclusory and not clearly connected to any false claims presented to the Government—as is the innocuous statement by Mansicalco's supervisor that the goal is to ensure the "best possible outcome for reimbursement." *Id.* ¶¶ 162-63.

In *Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 101 (2d Cir. 2019), the relator had provided "insufficient evidence" for portions of her retaliation claim where there was "nothing in the record indicating that she expressed concerns to anyone at Salix that these practices were illegal or may lead to the submission of false claims." *Id.* Similar to the vague concerns in this case, Dhaliwal's "generalized concerns" could not put Salix on notice that the relators were engaged in protected activity under the FCA. *Id.* at 101. The Second Circuit then distinguished these "generalized concerns" from those related to a particular speaker program—namely, where the relator alleged a specific instance where, upon meeting someone from the FDA at an event, she telephoned a supervisor and told her she wanted to raise concerns about improper marketing activity to a legal compliance officer. *Id.* Dhaliwal continued to insist on contacting the legal department, which the supervisor dissuaded her from doing. *Id.* No similar facts are alleged here. Unlike Dhaliwal, neither Maniscalco nor Pilat provides specific facts to support that their expressed concerns were legal-related or facts connecting these concerns to the FCA.

Whatever the seriousness of concerns about a defendant's noncompliance with a federal statute or about the health and safety of patients or residents, those concerns still must be connected in some way to a fraud against the government.  In *Adiram*, for example, the court determined that allegations that the defendant submitted invoices to the government for payment for services that were not actually provided were "conclusory"—while the concerns about health and safety were "serious," the allegations did not "support an inference that [the p]laintiffs were engaged in any conduct 'in furtherance of an action under [the FCA] or other efforts to stop' a violation of the FCA."  2015 WL 5706935, at *5.  Here, too, Relators appear to have raised concerns about the quality of care provided to patients, with vague references to billing.  But absent facts connecting those concerns to fraudulent billing, claims submitted to the Government, or mention of liability, these allegations are insufficient to show that they engaged in protected activity.

Accordingly, Relators' retaliation claims fail.

## IV.   LEAVE TO AMEND IS DENIED

Relators request leave to amend their pleading.  Dkt. 65, at 18 n.4.  Amedisys points out that Relators filed the Third Amended Complaint in response to an earlier motion to dismiss making the same arguments and, thus, have been given ample opportunity to state a claim.  Dkt. 66, at 10.

Complaints dismissed under Rule 9(b) are "almost always" dismissed with leave to amend."  *Piacentile*, 336 F. Supp. 3d at 137 (quoting *Pasternack v. Shrader*,

23

863 F.3d 162, 175 (2d Cir. 2017)).   Cases in which such leave is denied usually involve plaintiffs who "already had one opportunity to plead fraud with greater specificity or the defective allegations were made after full discovery in a related case." *Id.* (quoting *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986).  Amendment "is not warranted absent some indication as to what [a plaintiff] might add to [his or her] complaint in order to make it viable." *New York ex rel Khurana v. Spherion Corp.*, No. 15 CIV 6605 (JFK), 2016 WL 6652735, at *19 (S.D.N.Y. Nov. 10, 2016) (quoting *Shemian v. Research In Motion Ltd.*, 570 F. App'x 32, 37 (2d Cir. 2014)); *see also U.S. ex rel. Moore v. GlaxoSmithKline, LLC*, No. 06 CIV 6047 BMC, 2013 WL 6085125, at *6 (E.D.N.Y. Oct. 18, 2013) (denying leave to amend where plaintiff alleged no facts that indicate that he would ever be in a position to allege plausibly that a false claim was submitted and essentially conceded that he is not in possession of such information).

The Court declines to grant leave to amend in this case.  The earlier motion to dismiss (preceding the Third Amended Complaint) raised similar—if not identical—arguments as to why Relators' complaint is insufficient. *Compare* Dkt. 51-1, with Dkt. 61-1.  Relators have had ample opportunity to plead their claims, and nothing suggests they would be successful if given another opportunity. *See United States v. Novartis Pharms. Corp.*, No. 13-CV-3700 (KMW), 2022 WL 4217749, at *10 (S.D.N.Y. Sept. 13, 2022) (leave to amend denied where relator did not cure deficiencies in amended complaint, even after court provided guidance on particularity requirement); *see also Ladas*, 824 F.3d at 28 (no abuse of discretion in

24

denial of leave to amend further where plaintiff was fully aware of Rule 9(b) challenges and subsequent complaint failed to cure deficiencies); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 71–72 (2d Cir. 1996) (upholding district court decision to dismiss without leave to replead a fifth time because plaintiffs had not cured complaint's deficiency); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982) (district court did not abuse its discretion in refusing plaintiff a third attempt to restate defective fraud allegations); *Weinstein v. Appelbaum*, 193 F. Supp. 2d 774, 782 (S.D.N.Y. 2002) (dismissing with prejudice plaintiffs' amended complaint, their fourth attempt overall, after holding that plaintiffs had not pled fraud with particularity).  On the facts here, leave to amend is not warranted.  The Court therefore dismisses the Third Amended Complaint without leave to amend.

## CONCLUSION

For the reasons discussed above, Amedisys's Motion to Dismiss (Dkt. 61) the Third Amended Complaint is GRANTED.  The Clerk of Court shall close the case.

SO ORDERED.

Dated:     March 13, 2023
           Buffalo, New York


JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE