UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, *ex rel.*
MICHAEL PILAT,
PHILIP MANISCALCO,

Plaintiffs,

v.

AMEDISYS, INC.,

Defendants.

---

**DECISION**
**and**
**ORDER**

**17-CV-136-JLS(F)**

APPEARANCES:

MICHAEL DiGIACOMO
UNITED STATES ATTORNEY
Attorney for Plaintiffs
DAVID M. CORIELL,
MARYELLEN KRESSE,
KATHLEEN A. LYNCH,
Assistant United States Attorneys, of Counsel
138 Delaware Avenue
Buffalo, New York 14202

SPIRO HARRISON & NELSON
Attorneys for Plaintiffs
DAVID B. HARRISON,
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042,

MARISSA K. DeANNA,
MICHAEL J. SULLIVAN,
200 Monmouth Street, Suite 310
Red Bank, New Jersey 07701,
and
JOSEPH M. ESPOSITO, of Counsel
100 Pearl St, Suite 1803
New York, New York 10004

NIXON PEABODY LLP
Attorneys for Defendant
MARK A. MOLLOY
40 Fountain Plaza, Suite 500
Buffalo, New York 14202

and
BRIAN K. FRENCH,
BRIAN T. KELLY,
JACOB E. MORSE,
BRIANNA N. PORTU, of Counsel
Exchange Place
53 State Street
Boston, Massachusetts 02109

In this *qui tam* False Claims Act action, by Decision and Order filed October 21, 2025, the court granted Plaintiffs' motion to compel Defendant's document production filed August 8, 2025 (Dkt. 116) ("Plaintiffs' motion") (Dkt. 120) ("the October 21, 2025 D&O"). Defendant appealed the October 21, 2025 D&O pursuant to Fed.R.Civ.P. 72(a) (""Rule 72(a)") on November 4, 2025 (Dkt. 124). In a Decision and Order filed December 30, 2025, the District Judge affirmed the October 21, 2025 D&O in its entirety (Dkt. 128). Thereafter, by Decision and Order filed June 1, 2026 (Dkt. 141) ("the June 1, 2026 D&O"), the court granted Plaintiffs' request, pursuant to Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37(a)(5)(A)), for an award of Plaintiffs' reasonable expenses including attorneys fees incurred in connection with Plaintiffs' motion and in opposition to Defendant's Rule 72(a) appeal.[1, 2]

---

[1] Although, "[i]t is well-settled that 'attorneys are generally entitled to recover the reasonable cost of making a fee application[.],'" *Sussman Sales Company, Inc. v. VWR International, LLC*, 2026 WL 24775080, at *5 (S.D.N.Y. Aug. 21, 2026) (quoting *SA Luxury Expeditions, LLC v. Schleien*, 2023 WL 8072914, at *4 (S.D.NY. Nov. 21, 2023) (citations omitted)), Plaintiffs do not request any expenses for preparation of Plaintiffs' request.

[2] Magistrate judges have authority to grant requests for attorneys fees as a sanction pursuant to Rule 37(a)(5)(A). *See In re Terrorist Attacks on September 11, 2001,* 2022 WL 4642478 at *17 n. 13 (2d Cir. Sept. 21, 2022) (noting sanction orders that do not dispose of an action, including an order imposing monetary sanctions in the form of attorney fees and are within a magistrate judge's authority); *Townsend v. Haza Foods, LLC*, 2026 WL 809490, at *2 (W.D.N.Y. Mar. 24, 2026 (citing *Xerox Corp. v. Conduit Glob., Inc.*, 2025 WL 586244, at *1 (W.D.N.Y. Feb. 24, 2025)); *Wright v. Rochester Sportfishing, Inc.*, 2025 WL 3703602, at *4 (W.D.N.Y. Dec. 22, 2025) ( "'As an award of attorney's fees as a discovery sanction under Rule 37 is nondispositive, defendant's motion is properly decided by a magistrate judge.'" (quoting *Park v. Kim*, 2024 WL 5643192, at *1 n. 2 (E.D.N.Y. May 1, 2024)).

In papers filed June 22, 2026 (Declaration of David B. Harrison In Support of Relators' Application For Attorneys Fees) ("Harrison Decl.")) (Dkt. 142), Plaintiffs submitted Plaintiffs' expense request seeking an award of $147,205 together with Exhibit 1, a redacted copy of Plaintiffs' counsels' billing record in connection with Plaintiffs' motion for the period from April 23, 2025 through December 1, 2025 (Dkt. 142-1) representing Plaintiffs' counsels' time incurred in connection with Plaintiffs' motion and opposition to Defendant's Rule 72(a) appeal ("Plaintiffs' application"). The billing records in support of Plaintiffs' application consists of nine pages providing 144 time entries for the six attorneys Plaintiffs aver worked on Plaintiffs' motion and Plaintiffs' opposition to Defendant's Rule 72(a) appeal together with abbreviated descriptions of the nature of the work performed. *See* Harrison Decl. (Dkt. 142) Exh. 1 ("Plaintiffs' Exh. 1"). Plaintiffs' complete redactions of each description of counsels' work recorded in the billing records made review of the legal work records by Plaintiffs' six attorneys impossible. Accordingly, by Text Order filed June 23, 2026, Plaintiffs were directed to provide to the court for *in camera* inspection, an unredacted copy of the complete billing record (Dkt. 143) ("the June 23, 2026 Text Order"). In compliance with the June 23, 2026 Text Order, Plaintiffs submitted an unredacted copy of the billing records for Plaintiffs' motion and opposition to Defendant's Rule 72(a) appeal to the court for *in camera* review. Dkt. 153. On June 29, 2026, in response to Defendant's e-mail request, Plaintiffs served Defendant with a copy of the unredacted billing records with "substantially reduced redactions." (Dkt. 146-1) ¶ 6, 7. On July 2, 2026, Defendant filed Defendant's Opposition to Relators' Application for Attorneys Fees (Dkt. 146) ("Defendant's Opposition"), together with the Declaration of Mark Malloy In Support of Defendant's Opposition (Dkt. 146-1) ("Mark

Molloy Decl.") together with Exh. A (Dkt. 146-2) (the parties' e-mail chains) regarding Plaintiffs' Exh. 1. Defendant's Exhibit B (Dkt. 146-3) are copies of an e-mail chain, May 8, 2025 and May 15, 2025, between the parties concerning a joint letter to the court seeking guidance on the discovery dispute leading to Plaintiffs' motion. On July 7, 2026, Plaintiffs filed Relators' Reply Brief In Further Support Of Their Application For Attorneys' Fees (Dkt. 147) together with Exhibits A (Dkt. 147-1), B (Dkt. 147-2), C (Dkt. 147-3), D (Dkt. 147-4), E (Dkt. 147-5), F (Dkt. 147-6) and G (Dkt. 147-7)[3] ("Plaintiffs' Reply"). Oral argument was deemed unnecessary.

In Plaintiffs' application, Plaintiffs submit that Plaintiffs' attorneys, including two partners in Plaintiffs' counsel's law firm, and four associates, incurred 193 hours in connection with the preparation and filing of Plaintiffs' motion[4] and Plaintiffs' opposition to Defendants' Rule 72(a) appeal. Harrison Decl. (Dkt. 142) ¶¶ 42, 43. Specifically, Plaintiffs request $62,000 for 62 hours of work by David Harrison, a partner, $38,760 for 40.8 hours of work by Michael Sullivan, another partner, $32,395 for 58.9 hours of work by Joseph Esposito, a senior associate, and $14,050 for 29.6 hours of work by three other associates. *See* Harrison Decl. (Dkt. 142) ¶ 42. Plaintiffs' counsels' offices are located in Montclair, New Jersey (Harrison), Red Bank, New Jersey (Sullivan and

---

[3] Plaintiffs' Exhibit A consists of copies of e-mails between the parties' counsel in which Plaintiffs request Defendant provide the hourly billing rate of Defendant's counsel and Defendant counsel's refusal. Plaintiffs' Exhibits B - G are copies of attorney fee awards made by the U.S. Bankruptcy Court for the Western District of New York, the District of Delaware, and the District of Massachusetts reflecting counsels' hourly rates ($665 to $1,460) for attorneys including Jones Day which previously served as Defendant's counsel, and attorneys at the Boston office of Nixon Peabody, Defendant's counsel in this action, involved in the underlying bankruptcy proceedings.

[4] Plaintiffs' motion papers consisted of a two-page declaration, a 21-page memorandum of law, and three exhibits of 161 pages (Dkt. 116) plus a 15-page reply memorandum of law (Dkt. 119).

DeAnna) and New York City (Esposito).[5]

Defendant's Opposition contends that (1) Plaintiffs' attorneys' hourly billing rates exceed those for comparable attorneys, including partners and associates, practicing within this district in violation of the forum rule, (2) Plaintiffs' application includes time spent in addressing issues not within the scope of the June 1, 2026 D&O ("the court's order') (Dkt. 120), *i.e,* Plaintiffs' expenses incurred in connection with Plaintiffs' successful motion to compel (Dkt. 116) and in opposing Defendant's Rule 72(a) appeal, and (3) the time Plaintiffs' attorneys claim to have spent in the preparation and filing of Plaintiffs' motion and opposition to Defendant's Rule 72(a) appeal was excessive. *See* Defendant's Opposition (Dkt. 146) at 1-2, 5. In Plaintiffs' Reply, Plaintiffs argue Plaintiffs' redactions were proper based on entries raising privilege and work product issues, *see* Plaintiffs' Reply (Dkt. 147) at 5, the forum rule presumption does not apply to Plaintiffs' counsel's representation on Plaintiffs' motion, Plaintiffs' counsel's hourly rates are reasonable, *id.* at 6-9, and the time spent by Plaintiffs' counsel on Plaintiffs' motion is within the scope of the court's order. *Id.* at 9-12.

In support of Plaintiffs' application, Plaintiffs filed a copy of their attorneys' billing records with all the "Notes" describing the particular services rendered for each billing entry redacted. Dkt. 142-1 at 2. As noted, at the undersigned's request (June 23, 2026 Text Order) (Dkt. 143), Plaintiffs' counsel provided an unredacted copy of the billing records, a plain review of which fails to reveal that any of the redacted information (*i.e.* "Notes") was protected by any privilege or other ground potentially supporting redaction. Relevantly, "[T]he public has a common law presumptive right of access to judicial

---

[5] The locations of the offices of two other associates, Robert Casino and F. Noelle Reyes, are not provided in the record.

documents. . ..” *Gambale v. Duetsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004). The presumptive right of access to judicial documents is founded in the First Amendment. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). A “judicial document” is “a filed item that is ‘relevant to the performance of the judicial function and useful in the judicial process.’” *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch*, 435 F.3d at 119). Billing records submitted in support of a motion for attorney fees as a sanction are judicial documents. *Escape IP, LLC v. Google LLC*, 2025 WL 1636726, at * 1 (S.D.N.Y. June 9, 2025). Although the presumption of public access to a judicial document may be overcome if the court makes “specific, on the record findings” that redactions are necessary “to preserve higher values,” and are “narrowly tailored to serve that interest,” *Lugosch*, 435 F.3d at 120, in the instant case, no such showing has been made. Accordingly, the undersigned exercises the inherent power of the court to file the unredacted copy of Plaintiffs’ counsel’s billing records. *See Gambale*, 377 F.3d at 141-42 (affirming lower court’s decision to, *sua sponte*, modify a protective order and unseal documents “in exercise of its ‘supervisory power over its own records and files’” (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978))). Accordingly, the unredacted copy of the billing records (Dkt. 142-1) submitted by Plaintiffs in compliance with the June 26, 2026 Text Order will be filed.

(1) Forum Rule.

In calculating a proper fee award pursuant to Rule 37(a)(5)(A), courts are required to determine a “lodestar” amount by multiplying a reasonable number of attorney billing hours incurred by counsel in litigating the matter by a reasonable hourly fee. *See*

*Andrews v. Town of West Seneca*, 2026 WL 1336047, at *1 (W.D.N.Y. May 13, 2026) (quoting *New York v. Grand River Enterprises Six Nations, Ltd.*, 2021 WL 4958653, at *2 (W.D.N.Y. Oct. 26, 2021) (quoting *Healy v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007))). Where, as here, Plaintiffs request the court apply hourly billing rates applicable in Plaintiffs' counsel's out-of-district locations, the District of New Jersey and the Southern District of New York, the court is required to consider the forum rule which requires the reviewing court apply hourly market rates "'employed in the district in which the reviewing court sits'" to a Rule 37(a)(5)(A) fee request. *See* Defendant's Opposition (Dkt. 146) at 5 (citing *Townsend,* 2026 WL 809490, at *2 ("'[D]eviation from the forum rule is only appropriate 'in the unusual case,' in which a litigant demonstrates that her selection of counsel was 'reasonable under the circumstances[.]'"). *Id.* (quoting *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("*Simmons*")). Therefore, "a presumption in favor of application of the forum rule" applies to determine an hourly rate in awarding expenses in connection with a prevailing party's Rule 37(a)(5)(A) request. *See id.* (citing and quoting *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (quoting *Simmons*, 575 F.3d at 175), *cert. denied*, __ U.S. __, 144 S.Ct. 822 (2024))). "'[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.'" *Id*. (quoting *Simmons*, 575 F.3d at 175). "Overcoming this presumption accordingly [also] requires 'a particularized showing . . . of the likelihood that use of in-district counsel would produce a substantially inferior result.'" *Id*. (quoting *Simmons*, 575 F.3d at 176).

Given that Plaintiffs' application, *see* Harrison Decl. (Dkt. 142) (*passim*), fails to

justify deviating from the forum rule, and without any reference to the rule, with respect to the hourly rates charged by Plaintiffs' attorneys, Defendant asserts that the court should apply the forum rule which would require the court apply attorney billing rates applicable to this district. Defendant's Opposition (Dkt. 146) at 5-6. Applying the forum rule to the instant case, Defendant submits that the hourly rates for Mr. Harrison's time in this matter is $300, for Mr. Sullivan, $250, and $200 for each of the four associates. Defendant's Opposition at (Dkt. 146) at 14. In Defendant's Opposition, Defendant asserts Plaintiffs' application award, with reductions based on Plaintiffs' claims for excessive attorney time and work outside the scope of the court's order, should be limited to $7,534.50. *See* Defendant's Opposition (Dkt. 146) at 2. Defendant further contends that should Plaintiffs in a reply memorandum seek to justify an exception to the forum rule in the instant case, the court should reject such attempt. Defendant's Opposition (Dkt. 146) at 6 (citing *Capaccio v. Zafuto*, 2025 WL 723207, at *3 n. 14 (W.D.N.Y. Mar. 6, 2025) (citing *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) ("[T]he Second Circuit has made it abundantly clear that a district court has *discretion* to consider a belatedly-raised argument [in reply]" (italics in original), *aff'd,* 374 Fed.Appx. 71 (2d Cir. 2010)))). Courts therefore may, in their discretion, consider arguments presented for the first time in a reply. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (district court has discretion to consider arguments first presented in reply papers). Given, based on Second Circuit caselaw (*i.e.*, *Simmons*), the controlling effect of the forum rule on the merits of Plaintiffs' application, the court, notwithstanding Plaintiffs' failure to address the issue in Plaintiffs' application, *viz.*, Harrison Decl. (Dkt. 142), addresses Plaintiffs' attempt, as stated in Plaintiffs' Reply, to overcome the

presumption requiring application of the forum rule. *See* Dkt. 147 at 6-8.

In Plaintiffs' Reply, Plaintiffs assert that this case involves complex and extensive discovery issues involving "uniquely specialized" litigation particular to *qui tam* FCA cases as evidenced by the issues, Defendant's request to temporally and geographically limit the scope of discovery, presented in Plaintiffs' motion. Plaintiffs' Reply (Dkt. 147) at 7 (citing *United States ex. rel. Doe v. Acupath Laboratories, Inc.*, 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 6, 2015), *report and recommendation adopted*, 2015 WL 1293019, at *1 (E.D.N.Y. Mar. 19, 2015) ("*Acupath*"). Significantly, however, in *Acupath*, the court, although acknowledging that *qui tam* FCA litigation may be complex, nevertheless found the facts in support of non-application of the forum rule presented by plaintiff's attorneys in that case failed to support the use of the out-of-district billing rates sought by plaintiff's counsel. *See id.* at *10. Nor does the *Acupath* decision attempt to create an exception to the prerequisites for refusing to apply the forum rule as required by *Simmons* in *qui tam* FCA cases. *See Acupath Laboratories, Inc.,* 2015 WL 1293019 (*passim*). Indeed, in *Acupath,* the court strictly applied *Simmons* to "*limit* fees for out-of-state attorneys [located in districts] with higher rates, unless counsel can prove he or she was selected in order to produce a substantially better result for the client". *Acupath Laboratories, Inc.,* 2015 WL 1293019 at *12 (citing *Simmons*, 375 F.3d at 175) (italics in original); *see also United States ex rel. Carranza v. Guaranteed Rate, Inc.*, 2021 WL 494696, at *8 (N.D.N.Y. Feb. 10, 2021) ("*Carranza*") (in rejecting plaintiff's counsel's request to apply higher out-of-district hourly rates to counsel's representation in plaintiff's *qui tam* FCA case regardless of plaintiff's assertion that such litigation is "complex and requires a great deal of skill to litigate," the court further stated it had previously determined the litigation

to be "relatively straight forward" and that law firms within the district were "capable of handling such [FCA] matters.") (citing *United States ex rel. Rubar v. Hayner Hoyt Corp*., 306 F.Supp.3d 478, 488 (N.D.N.Y. 2018) ); *United States ex rel. Joseph F. Tommasino, P.A., PhD v. Guida, M.D.*, 2017 WL 878587, at *5 (E.D.N.Y. Mar. 6, 2017) (while noting that *qui tam* litigation under the FCA is a "specialized area of law," the court stated it is "not clear that such cases are so complex and specialized that they may merit higher [hourly] rates than other commercial cases involving areas of law as complex as patent infringement, commercial real estate, or securities [litigation] . . ..") (citing cases).

Thus, the court, upon this record, finds Plaintiffs have failed to provide a particularized showing that experienced counsel capable of effective representation in the instant case were not available in this district and that the use of in-district attorneys would necessarily "produce a substantially inferior result." *Townsend*, 2026 WL 809409, at *2 (rejecting plaintiff's request to apply billing rates for plaintiff's counsels' locations in Pittsburgh, Pennsylvania and Santa Barbara, California, where plaintiff "has not even attempted to show that retaining in-district counsel would have produced a substantially inferior result," (quoting *Simmons*, 575 F.3d at 176, and citing *Osterweil v. Bartlett*, 92 F.Supp.3d 14, 17 (N.D.N.Y. 2015) ("*Osterweil*") (applying forum rule where the plaintiff failed to show "that attorneys within [the] district [were] not competent to handle" the litigation because the plaintiff "appears to have assumed that local counsel could not have achieved a successful result in this action <u>without inquiring into the competence and expertise of attorneys within this district</u>" (alterations added)) (underlining added))). *See also Grant v. Lockett*, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) (Summary Order) ("*Grant*") affirming district court's refusal to except attorneys fee award from forum rule

where plaintiff failed to make particularized showing "why local counsel could not have achieved a similar result"). *Cf. United States ex rel. Ross v. Independent Health Corporation,* 2026 WL 2924180, at *3 (W.D.N.Y. Sept. 29, 2026) ("*Ross*") (finding relator, following settlement of plaintiff's *qui tam* FCA action, rebutted application of forum rule where relator, then a resident of Seattle, Washington, was unaware at time of retaining out-of-district counsel, located in Washington, D.C., that suit would be filed in this district and had "'little reason to seek counsel based here.'" The court in *Ross* also found that given the case was in litigation for 12 years prior to settlement relator also "established 'the likelihood that the use of in-district counsel would produce a substantially inferior result,'" *Id.* at 4 (citing *Simmons*, 575 F.3d at 176), which conclusion was supported by the plaintiff submitting the opinion of a non-party attorney with acknowledged expertise in FCA attorneys' fees and a "<u>detailed</u> description of the credentials and expertise of the [plaintiff's] firms and billing attorneys." *Id.* (underlining added).

"'In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise.'" *Carranza*, 2021 WL 494696, at 8 (quoting *Simmons*, 575 F.3d at 175-76). As in *Grant, Townsend, Carranza,* and *Osterweil*, Plaintiffs also failed to particularize why local counsel were not capable of achieving a favorable result in litigating Plaintiffs' motion. Significantly, in the instant case, Plaintiffs' counsel fail to demonstrate, *see* Harrison Decl. (Dkt. 142) at 4-6, the actual extent of their litigation experience in *qui tam* FCA cases as required, *see Carranza*, 2021 WL 494696, at *8 (plaintiff's counsel's failure to indicate how many years

each attorney has been working on FCA cases "fails to meet *Simmons*' standard that counsel's special expertise warrants departure from forum rule") (citing *Simmons*, 575 F.3d at 175-76). Contrary to the generalized assertions of Plaintiffs' counsel, *see* Harrison Decl. (Dkt. 142) ¶¶ 16-40, Plaintiffs fail to submit any evidence Plaintiffs' counsel have successfully litigated any complex *qui tam* FCA cases to conclusion or successfully litigated any related discovery motions similar to Plaintiffs' successful motion in this case. Specifically, Mr. Harrison's experience in FCA matters is, according to his Declaration, limited to "consulting on matters involving false claims act litigation," not actual representation in FCA cases in which a *qui tam* plaintiff was successful. No details as to the exact nature of such consulting nor the outcome of the cases in which Mr. Harrison participated is provided. Likewise, according to Mr. Harrison, Mr. Sullivan's experience is limited to "business-related litigation, including breach of contract, fraud, breach of fiduciary duty, business torts, [and] shareholder disputes," not FCA cases. Harrison Decl. (Dkt. 146) ¶ 22. As to Plaintiffs' associate attorneys, Ms. DeAnna, Mr. Esposito, Mr. Robert Casino, and Ms. F. Noelle Reyes, none, according to Mr. Harrison, have had any prior FCA litigation experience. *See* Harrison Decl. (Dkt. 142) ¶¶ 27, 31, 34, 38. Thus, on this record the court finds no basis to support Plaintiffs' assertions that "Relators' [are represented by] experienced [in FCA matters] counsel," Plaintiffs' Reply (Dkt. 147) at 6, "[that] counsel has <u>significant</u> <u>specialized</u> <u>experience</u> <u>in</u> <u>FCA</u> and whistleblower cases," or that "the attorneys working on this matter collectively bring "<u>decades</u> of <u>experience</u> litigating <u>FCA</u> cases . . . and are <u>uniquely</u> <u>specialized</u> in the field of FCA litigation." *Id.* at 7 (underlining added). Notably, Plaintiffs have not filed any declarations detailing Plaintiffs' reasons for selecting Mr. Harrison or Mr. Sullivan as their counsel in this matter.

Thus, Plaintiffs have failed to establish that Plaintiffs' attorneys are experienced and possess special expertise in such cases as *qui tam* FCA counsel and that representation by in-district counsel would likely have resulted in a less favorable outcome on Plaintiffs' motion.

As regards Plaintiffs' submission unrelated to the instant case of Bankruptcy Court fee determinations, *see* Dkt. 147-2 - 147-7, in the absence of any authority submitted by Plaintiffs to support their relevance to the instant matter of such determinations, *i.e.,* whether the forum rule applies to fee awards in bankruptcy cases, the court declines to consider, contrary to Plaintiffs' urging, *see* Plaintiffs' Reply (Dkt. 147) at 8-9, the hourly rates approved by the courts as reflected in those exhibits. *See* (Dkt. 147-2-7). Thus, based on Plaintiffs' failure to establish sufficient grounds for rejecting application of the forum rule in this case, the court applies the forum rule to Plaintiffs' application. The court therefore turns to the appropriate billing rates based on attorneys' experience in this district for Plaintiffs' attorneys.

In this district, $500 per hour is reasonable for an attorney with Mr. Harrison's experience[6] and $400 per hour for Mr. Sullivan with 16 years of experience. Plaintiffs' Application (Dkt. 142) at 5. *See Aycock v. Tao Motor, Inc.*, 2026 WL 1972003, at *5 (W.D.N.Y. July 8, 2026) (finding $500 per hour reasonable for non-district attorneys with over 20 years of trial experience) (citing *New York v. Grand River Enters. Six Nations, Ltd.*, 2021 WL 4958653, at *4 (W.D.N.Y. Oct. 26, 2021))). For senior associates, a reasonable hourly billing rate in this district is $285-315, and for a junior associates $245-

[6] Although Plaintiffs do not provide any information concerning the length of Mr. Harrison's experience as an attorney, the court's research indicates Mr. Harrison's experience as a lawyer is 17 years. *See* NEW YORK STATE UNIFIED COURT SYSTEM, ATTORNEY ONLINE SERVICES, ATTORNEY DIRECTORY*, available at* iapps.courts.state.ny.us/attorneyservices/details?2, *last visited* Oct. 6, 2026**.**

275. *See Midwest Athletics & Sports Alliance LLC v. Xerox Corp.*, 2025 WL 1720296, at *3 (W.D.N.Y. June 30, 2025). Thus, the court finds the reasonable forum-based hourly billing rates for Plaintiffs' attorneys as follows: Harrison - $500; Sullivan - $400; DeAnna - $315; Esposito - $315; Casino - $250; Reyes - $250.

(2) Excessive Attorney Time.

Defendant contends the court should apply a 70% across-the-board reduction in the 193 total hours sought by Plaintiffs. Defendant's Opposition (Dkt. 146) at 11-13. Specifically, Defendant argues that according to Plaintiffs' application Plaintiffs' counsel, particularly Mr. Harrison, engaged in extensive reviews and revisions of the draft of Plaintiffs' motion, *id.*, at 11, primarily prepared by Mr. Esposito and Mr. Sullivan, a conclusion substantiated by the court's review of the unredacted billing record submitted by counsel for its *in camera* review. *See generally*, Plaintiffs' Exh. 1 (Dkt. 153): Entry July 18, 2023 "Reviewed [Plaintiffs'] Motion to Compel ("MTC")" - David B. Harrison, (*id.*) at 4; Entry July 21, 2025 "Reviewed and Revised MTC Brief" - D. Harrison, (*id.*) at 4; Entry July 24, 2025 "Reviewed and Revised MTC" - D. Harrison, (*id.*) at 5; Entry July 25, 2025 "Reviewed and Revised MTC" - D. Harrison, (*id.*) at 5; Entry August 7, 2025 "Reviewed and Revised MTC" - D. Harrison, (*id.*) at 5; Entry August 8, 2025 "Reviewed and Revised MTC" - D. Harrison, (*id.*) at 6.

In contrast, that the 27 billing entries for Mr. Sullivan and Mr. Esposito, far exceed Mr. Harrison's numerous reviews of Plaintiffs' MTC, strongly support that such extensive drafting and reviews by Mr. Esposito and Mr. Sullivan should have been sufficient to prepare Plaintiffs' successful motion to compel in this case: *See* Plaintiffs' Exh. 1 (Dkt. 153) Entry June 27, 2025 "Research and Draft Motion to Compel"- Joseph Esposito, (*id.*)

at 3; Entry June 30, 2025 "Revise Motion to Compel" - J. Esposito, (*id.*) at 3; Entry June 30, 2025 "Review and analyze draft motion to compel" - Michael Sullivan, (*id.*) at 4; Entry July 2, 2025 "Review and analyze draft motion to compel" - M. Sullivan, (*id.*) at 4; Entry July 7, 2025 "Revised Motion to Compel" - M. Sullivan, (*id.*) at 4; Entry July 8, 2025 "Revise Motion to Compel" - M. Sullivan, *(id.)* at 4; Entry July 9, 2025 "Review materials supporting Motion to Compel" - M. Sullivan, (*id*.) at 4; Entry July 15, 2025 "Research and Draft Motion to Compel" - J. Esposito, (*id*.) at 4; Entry July 16, 2025 'Update and review draft Motion to Compel" - J. Esposito, (*id.*) at 4; July 17, 2025 "Revise Motion to Compel" - M. Sullivan, (*id.*) at 4; Entry July 18, 2025 "Revise Motion to Compel" - M. Sullivan, (*id*.) at 4; Entry July 21, 2025 "Finalize Draft Declarations" - J. Esposito, (*id.*) at 4; Entry July 22, 2025 "Revise and incorporate DH edits to Motion to Compel" - J. Esposito*,* (*id.*) at 4; Entry July 23, 2025 "Review and analyze latest draft to Motion to Compel" - M. Sullivan, (*id.*) at 5; Entry July 25, 2023 "Revise motion to compel papers" - M. Sullivan, *(id.)* at 5; Entry July 31, 2025 "review MTC" - M. Sullivan, (*id.*) at 5; Entry August 6, 2025 "revise Motion to Compel" - J. Esposito, (*id.*) at 5; Entry August 7, 2025 "update and revise declaration of David Harrison . . . regarding Motion to Compel" - J. Esposito, (*id.*) at 5; Entry August 8, 2025 "File motion to compel," "finalize . . . and file motion to compel" J. Esposito, (*id.*) at 6; Entry Sept. 7, 2025 "review and analyze opposition to motion to compel" - M. Sullivan, (*id.*) at 6. The same may be said of Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' motion. *See* Plaintiffs' Exh. 1 (Dkt. 153): Entry Sept. 8, 2025 "preliminary review of arguments as opposition to the MTC" - J. Esposito, (*id.*) at 6; Entry Sept. 8, 2025 "Review and analyze opposition to MTC" - M. Sullivan, (*id.*) at 6; Entry Sept. 10, 2025 "Review brief draft of reply to opposition to MTC, draft responsive

arguments" - J. Esposito, (*id.*) at 6; Entry Sept. 10, 2025 "Revise reply brief re: MTC" - M. Sullivan, (*id.*) at 7; Entry Sept. 12, 2025 "Revise, finalize [reply] brief and file" - J. Esposito, (*id.*) at 7; Entry Sept. 10, 2025 "Revise reply brief re: MTC" - M. Sullivan, (*id.*) at 7.[7] Mr. Harrison incurred a total of 6.8 hours in reviewing Defendant's opposition to Plaintiffs' motion to compel and Plaintiffs' draft replies. *See* Entry Sept. 8, 2025, (*id.*) at 6; Entries Sept. 10, 11, & 12, (*id.*) at 7.

However, courts need not engage in "a line-item review of fee applications." *Sussman Sales Company,* 2026 WL 2475080, at *3 (citing and quoting *O'Toole v. Allied Intestate, LLC*, 2012 WL 6197086, at *1 (S.D.N.Y. Dec. 12, 2012). Instead, "if the court finds the requested hours excessive, redundant, or otherwise unnecessary, 'it may exercise its discretion and use a percentage deduction 'as a practical means of trimming fat from a fee application.'" *Id.* (internal citations and quotation marks omitted). In addition, Plaintiffs contend, contrary to Defendant's objection, *see* Defendant's Opposition (Dkt. 146) at 7-8, that the parties' preliminary discussions and drafting of the May 16, 2025 joint letter to the court qualify as incurred in connection with the preparation of Plaintiffs' motion to compel. *See* Plaintiffs' Reply (Dkt. 147) at 10 (citing *Jackson v. Nassau Cnty,* 602 F.Supp.3d 352, 357-58 (E.D.N.Y. 2022) (meet and confer process as well as discussion of defendant's privilege claims and related documents within Rule 37(a)(5)(A) reasonable fee award); *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 276 F.R.D. 105, 113 (S.D.N.Y. 2011) (attorney time incurred in document review, internal discussions, and correspondence with opposing counsel reimbursable in Rule 37 sanction on motion to compel). Plaintiffs' commencing research on June 27, 2025, *see*

[7] Preparation of Plaintiffs' Reply also included several entries by Marissa DeAnna for September 8, 9, and 11, 2025 related to Plaintiffs' MTC. *See* (Dkt. 153) at 6-7.

Dkt. 153 at 3, including Plaintiffs' counsels' time, (Dkt. 153) at 8-9, incurred in opposing Defendant's appeal of the October 21, 2025 D&O. *See* Defendant's Opposition (Dkt. 146) at 11-12. Based on such authorities, the court finds Plaintiffs' time entries for the proceedings prior to Plaintiffs commencing research on Plaintiffs' motion on June 27, 2025, *see* (Dkt. 153) at 3, are within the scope of the court's order and subject to the 50% reduction imposed by the court. Thus, based on its review of Plaintiffs' motion and opposition to Defendant's Rule 72(a) appeal, the court, based on excessive attorney time incurred by Plaintiffs' counsel, finds a reduction of 50% of the total number of attorney hours requested by Plaintiffs' application is warranted. *See Sussman Sales Company, Inc.*, 2026 WL 2475080, at **4-5 (reducing defendant's request by 50% for defendant's discovery motion based on defendant's attorneys' excessive hours; *Grand River Enterprises Six Nations, Ltd.*, 2021 WL 4958653, at *5 (reducing plaintiff's attorneys hours by 70%); *United States ex rel. Nichols v. Computer Sciences Corporation*, 499 F.Supp.3d 32, 46 (S.D.N.Y. 2020) (in *qui tam* FCA case court imposed 50% reduction in relator's attorneys' fee request); *United States v. Acquest Transit LLC*, 2016 WL 3536673, at *3 (W.D.N.Y. June 29, 2016) (reducing by 50% plaintiff's attorneys hours where plaintiff "significantly overstaffed" the proceedings); *Romeo and Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249 at *8 (S.D.N.Y. July 2, 2013) (applying 75% reduction in plaintiff's counsel requested hours because of "numerous hours' that were "either excessive or otherwise unreasonable").

Finally, Plaintiffs' contention that general reductions in Plaintiffs' counsels' incurred hours are a potential abuse of discretion, *see* Plaintiffs' Reply (Dkt. 147) at 11 (citing *Raja v. Burns*, 43 F.4th 80, 89-90 (2d Cir. 2022) (finding district court's 40% reduction in fee

award based on attorney's block billing covering 6.5 hours constituted an abuse of discretion) ("*Raja*"), is without merit. Here, unlike in *Raja*, the court does not apply a reduction based on Plaintiffs' use of block-billing, instead relying on the court's well-recognized authority to reduce the claimed hours based on a finding such hours were "excessive, redundant or otherwise unnecessary." *See Raja,* 43 F.4th at 87 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Accordingly, *Raja* is inapposite. Finally, based on the court's 50% reduction in the Plaintiffs' requested hours, the court finds it is unnecessary to address Defendant's request to further reduce such hours because of Plaintiffs' use of block-billing, as asserted by Defendant, *see* Defendant's Opposition (Dkt. 146) at 12-13.

**CONCLUSION**

Based on the foregoing, Plaintiffs' Application is GRANTED in part and DENIED in part. Defendant shall pay to Plaintiffs $37,152 based on the following computation: Mr. Harrison - 62 hrs. x 50% = 31 hrs. x $500 = $15,500; Mr. Sullivan - 40.8 hrs. x 50% = 20.4 hrs. x $400 = $8,160; Ms. DeAnna and Mr. Esposito - 69 hrs. (rounded) x 50% = 34.5 hrs. x $315 = $10,867; Mr. Casino and Ms. Reyes 21.1 hrs. x 50% = 10.5 hrs. (rounded) x $250 = $2,625, to be paid to Plaintiffs' counsel within 30 days of this Decision and Order.

SO ORDERED.

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates: October 23, 2026
Buffalo, New York